IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Cheyenne Stokes,   Case No. 3:21-cv-00371-JGC

      Plaintiff,

    v.   **ORDER**

Ohio Truck Sales, LLC

      Defendant.

This is an employment discrimination case. Plaintiff, Cheyenne Stokes, claims that her former employer, Ohio Truck Sales, LLC (OTS) discriminated against her because she is a woman, failed to appropriately address the hostile work environment she experienced there, and retaliated against her when it terminated her for poor performance. Plaintiff brings claims under Title VII and analogous provisions of Ohio law.

Pending is defendant's motion for summary judgment (Doc. 12). For the reasons discussed below, I grant the motion as to plaintiff's gender discrimination and hostile work environment claims.

### Background

#### 1. Employment History at Ohio Truck Sales

Plaintiff Cheyenne Stokes began working at OTS in December 2019. (Doc. 11-1, pgID 55). She started as an administrative clerk. (*Id.*). In that role, she primarily focused on data entry regarding trucks traveling in and out of the facility. (*Id.*). Plaintiff collected and synthesized information about the number of trucks passing through the facility and the repairs they received. (*Id.*).

In March 2020, OTS promoted plaintiff to the position of data analyst. (*Id.*). In this role, she not only collected data but analyzed it using various spreadsheets she developed. (*Id.*).

In both the administrative clerk and data analyst positions, plaintiff had to interact with the mechanics and other personnel who worked on the trucks to gather the necessary information. (*Id.*, pgID 57).

Around September 2020, OTS again promoted plaintiff, this time to the role of production planner. (*Id.*, pgID 59). Lauren Kandle, the production director, recommended her for the role. (*Id.*, pgID 57, 59). The owner, President, and CEO of OTS, Chris Andrews, testified that he did not agree with Kandle's recommendation but ultimately acquiesced in the decision. (Doc. 13-1, pgID 132-33). At the time plaintiff received this promotion, she was the only woman working in her building. (Doc. 11-1, pgID 58-59).

As a production planner, plaintiff was responsible for developing and executing a system to track the trucks' maintenance. (*Id.*, pgID 60). That included "tracking the parts, tracking which bay [the truck] was going to go into, tracking how it was going to go to the mechanics." (*Id.*). Additionally, OTS expected plaintiff to process a certain number of trucks per month. (*Id.*).

After approximately one month in the production planner role, on October 2, OTS terminated plaintiff, citing issues with her performance, specifically her inability to "interact properly with the other employees." (Doc. 12, pgID 88; Doc. 13-1, pgID 125).

### 2. Alleged Performance Issues

Chris Andrews testified extensively regarding the performance issues that he contends ultimately led him to terminate plaintiff. His central complaint was that plaintiff could not get along with his other employees. (Doc. 13-1, pgID 133). He claims that these issues presented themselves only in the last month of plaintiff's employment, after she was promoted to

2

production planner. (*Id.*). Prior to that, Mr. Andrews was relatively satisfied with plaintiff's performance. (*Id.*, pgID 132, 144).

Generally, Mr. Andrews complained that plaintiff "was not looked at as a very professional person," "she looked like an unhappy person," and her interactions "just were not friendly." (*Id.*, pgID 138). Further, he stated that "[e]very time she would talk to people, she had the whole shop . . . definitely up in arms." (*Id.*, pgID 137).

Mr. Andrews also testified that plaintiff was not keeping up with her quotas in processing the required number of trucks per month. (*Id.*, pgID 133-34). When he approached plaintiff about this issue, he claims she did not make an effort to address his concerns. (*Id.*).

Mr. Andrews recalls a meeting between him, plaintiff, Mr. Kandler, and Bill Broski, who was a sales manager, approximately two weeks after plaintiff began as production planner. (*Id.*, pgID 134-35). Mr. Andrews testified that he and Mr. Broski communicated their dissatisfaction to plaintiff and Mr. Kandler regarding their progress toward that month's quota. (*Id.*). He described it as a "come-to-Jesus meeting," in which he communicated that the "numbers are very bad," "this is not working," and plaintiff needed to process three trucks per day. (*Id.*, pgID 131).

The next day, according to Mr. Andrews, the same group went out for lunch, and plaintiff informed them that she would only be processing one truck that day. (*Id.*, pgID 132). When Mr. Broski asked why she would not be processing three, plaintiff allegedly did not respond. (*Id.*).

It was because of these issues that Mr. Andrews asserts he terminated plaintiff only one month after her promotion.[1]

---

[1] OTS did not issue any written discipline in response to plaintiff's performance issues. Mr. Andrews claims this was because it was a "fast-moving company" and "everything just moved so quickly here that not everything's going to be documented." (Doc. 13-1, pgID 144-45). However, plaintiff did receive written discipline for violating the dress code. (*Id.*, pgID 130).

### 3. Alleged Discriminatory Incidents

Plaintiff claims, however, that OTS terminated her because she is a woman and because she complained of discriminatory treatment.

In support, she points to several interactions with OTS employees that she believes were discriminatory.

First, she describes an instance in which Matt McGowan, a "cosmetic guy," allegedly punched his computer out of frustration with plaintiff. (Doc. 11-1, pgID 58, 65). Mr. McGowan had asked plaintiff for help signing into the computer system, and plaintiff could not help him right away. (*Id.*). Plaintiff testified that she did not see Mr. McGowan punch the computer but heard a noise and then saw the computer fall to the ground. (*Id.*). Plaintiff believes that if she were "a 250-pound man standing there speaking with him, he would not have acted in that way." (*Id.*, pgID 66).

Later that day, there was another incident with Mr. McGowan. Plaintiff claims that Mr. McGowan threw a tool in her direction as she walked past him. (*Id.*). She suggests this was in response to his frustration with her earlier in the day. Plaintiff testified that she heard "a loud . . . tool or thump or noise either go passed [sic] me or hit the ground." (*Id.*). She did not see a tool being thrown or see Mr. McGowan throw anything. Plaintiff testified that it made her feel unsafe. (*Id.*). She reported the incident to Mr. Kandle, and Ohio Truck Sales terminated Mr. McGowan as a result. (*Id.*, pgID 66-67).

Plaintiff also describes an altercation with a "parts guy" named Aaron Opfer, who she testified screamed at her to "go away, get out of my face bro, or something like that." (*Id.*, pgID 67). Plaintiff said she does not know whether Mr. Opfer's outburst was related to her gender. (*Id.*).

4

The last incident plaintiff highlights involved an employee named Brandon Cooksey.[2] (*Id.*). Plaintiff testified that he helped her remove a stain from her jeans and described the interaction as follows:

> And at that time I was walking in between trucks and I was looking down and saw I had a whole bunch of white dust on my legs. And I said, hey, do you happen to see any white spots around me. I just got a whole bunch of, like, dirt and dust over me. And he said, oh, you have a spot over here. And he had like touched the area that was on my hip, buttocks area. And I said, okay. And I didn't pay any mind to it and I wiped it off and I said thank you. About a couple hours later I heard people saying that he had the chance of, like, touching me and he had grabbed my butt.

(*Id.*, pgID 67-68).

Plaintiff clarified that Mr. Cooksey helped her remove the stain and in doing so, touched her "hip/bottom area." (*Id.*, pgID 68). She confirmed that she did not become upset until she heard that Mr. Cooksey had been discussing the interaction with other people. (*Id.*).

Aside from these specific incidents, plaintiff reported generally that she believed the male employees were intimidated by her "taking charge" and had a negative attitude and demeanor when they interacted with her. (*Id.*, pgID 64-65). In explaining this attitude, she noted: "It was just very standoffish. It was always a chip on the shoulder, nose up in the air. They didn't talk to me the same. They didn't interact with me the same." (*Id.*, pgID 65).

## Standard of Review

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 where the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[2] This man was identified as Brandon Magucki in plaintiff's deposition, but plaintiff refers to him as Brandon Cooksey in her opposition to the motion for summary judgment.

The movant initially must show the absence of a genuine issue of material fact. *Id.* at 323. "[I]f the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial, the moving party may meet its initial burden by showing that 'there is an absence of evidence to support the nonmoving party's case.'" *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 764 (6th Cir. 2008) (quoting *Celotex*, *supra*, 477 U.S. at 325).

Once the movant carries its burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and submit admissible evidence supporting its position. *Celotex*, *supra*, 477 U.S. at 324.

I should grant summary judgment where "in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Benison v. Ross*, 765 F.3d 649, 658 (6th Cir. 2014).

## Discussion

### 1. Admissibility of Facts in Plaintiff's Complaint

Before considering the substance of plaintiff's claims, I must resolve an issue related to the admissibility of certain factual support in plaintiff's opposition brief. As defendant correctly notes, plaintiff refers to allegations in the complaint as supporting evidence for a number of her arguments.

I agree with defendant that this is impermissible. Plaintiff must "go beyond the pleadings" on summary judgment. *Celotex*, *supra*, 477 U.S. at 324. Rule 56 provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents,

electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56. Rule 56 does not allow citation to pleadings.

There is an exception to this rule for verified pleadings, i.e. a verified complaint. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008). A verified complaint is a complaint that the plaintiff signs under penalty of perjury. *Id.* Therefore, it "carries the same weight as would an affidavit for the purposes of summary judgment." *Id.*

Here, plaintiff has not signed her complaint under penalty of perjury; therefore, it is not a verified complaint, and I cannot consider its allegations as evidence. *See*, *e.g.*, *Lusco v. DAE Indus.*, No. 317CV00620RGJRSE, 2019 WL 4418019, at *3 (W.D. Ky. Sept. 16, 2019) ("Conclusory allegations in [a] complaint cannot serve to oppose a motion for summary judgment"); *Scharklet v. City of Portland, Tenn.*, No. 3-14-0193, 2015 WL 2451753, at *3 (M.D. Tenn. May 21, 2015) ("Plaintiff cannot rest on the allegations contained in his Complaint in opposition to a properly supported summary judgment motion.").

I have instead limited my review to the two deposition transcripts, which are the only admissible materials the parties have filed. (*See* Docs. 11, 13). To the extent plaintiff relies on an allegation in her complaint that is not mentioned in either deposition transcript, I will not consider it in evaluating defendant's motion and have not included it in the "Background" section above.

## 2. Gender Discrimination

Plaintiff brings a claim of gender discrimination against defendant, arguing that OTS terminated her because she is a woman.

7

Defendant contends that plaintiff cannot establish a prima facie case of gender discrimination because she cannot show that 1) she was qualified for her job or 2) defendant treated similarly situated individuals outside her protected class differently.

Plaintiff responds that she was qualified because she had the necessary education and background, had performed well in her roles prior to production planner, and there is no written record of any performance issues. She further argues that "numerous male employees" at OTS were similarly situated to her but were treated differently because the company did not discipline them for harassing plaintiff.

Since plaintiff has not presented any direct evidence of discrimination, and does not contend that she has, I apply the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

To establish a prima facie case of gender discrimination, plaintiff must show "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) she was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably." *Novotny v. Elsevier*, 291 F. App'x 698, 702 (6th Cir. 2008). If the employer can show a legitimate, nondiscriminatory reason for the adverse employment decision, plaintiff must also show that the given reason is pretext. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584 (6th Cir. 1992).

### A. Prima Facie Case

Defendant does not contest that plaintiff can satisfy the first and second prongs of her prima facie case: that she is a member of a protected group and that she was subjected to an adverse employment decision.

It does challenge, however, plaintiff's ability to satisfy the third and fourth prongs.

8

### i. Whether Plaintiff Was Qualified

In determining whether a plaintiff is qualified, a district court should "focus on a plaintiff's objective qualifications for the job, rather than the employer's assessment of the [plaintiff's] performance." *Erwin v. Potter*, 79 F. App'x 893, 900 (6th Cir. 2003). Further, I should be "careful to analyze qualification at the prima facie stage without taking into consideration the legitimate non-discriminatory reason for termination that a defendant may offer in the rebuttal stage." *Id.*; *see also White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005).

Here, defendant relies on its proffered legitimate non-discriminatory reason in arguing that plaintiff was not qualified for her job. Defendant essentially argues that plaintiff had performance issues, and that is why she was not qualified. But defendant relies on those same performance issues in arguing that it had a legitimate, non-discriminatory reason to terminate plaintiff. (*See* Doc. 12, pgID 90) ("Stokes' attitude and complete unwillingness to properly perform her job as instructed led to her termination."); (*Id.*, pgID 101) (plaintiff's "failure to perform her job satisfactorily was the precise reason for her termination.").

The Sixth Circuit has cautioned courts not to conflate "the distinct stages of the *McDonnell Douglas* test." *White*, *supra*, 429 F.3d at 242. Mindful of that directive, at this stage, I find defendant's argument without merit.

### ii. Whether Defendant Treated Similarly Situated Male Employees More Favorably

Plaintiff does not argue that defendant replaced her with someone outside her protected group; therefore, I focus my inquiry on whether she can show that it treated similarly situated male employees more favorably than it treated her.

9

To be "similarly situated" to plaintiff, the male employees she identifies must be similarly situated in "all relevant respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998). Pertinent factors include whether the male employees "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* These factors are not exhaustive, and their importance depends on the facts of the case before the court. *Id.*

Plaintiff has identified four individuals whom she claims are relevant comparators: Brandon Cooksey, Mark Wright, Aaron Opfer, and Bill Broski. Plaintiff alleges that each of these individuals discriminated against or harassed her in some way.

Mr. Cooksey is the employee who touched plaintiff's "hip/bottom area" while helping her remove a stain from her pants and then discussed it with other employees. Mr. Wright allegedly screamed at plaintiff to "walk away before you get someone else fired." (Doc. 14, pgID 158).[3] Mr. Opfer allegedly yelled at plaintiff to "go away get out of my face." And Mr. Broski allegedly said that he did not know what he could do about plaintiff's reports of harassment.[4]

Plaintiff does not provide any details as to how she and these employees were similarly situated other than they all engaged in conduct that defendant did not condone. They all allegedly harassed plaintiff or tolerated harassment of plaintiff, and plaintiff allegedly had performance issues. OTS terminated plaintiff but did not terminate any of these male employees.

---

[3] Plaintiff only identifies Mark Wright in her complaint, and there is no mention of him or the comment he allegedly made in either deposition transcript. Therefore, I must disregard him as a potentially similarly situated employee.

[4] The record likewise does not mention this allegation about Mr. Broski; therefore, I decline to consider it.

It is unclear whether plaintiff and her comparators dealt with the same supervisor or were subject to the same standards, but they did not engage in the same conduct. The Sixth Circuit has explained that "[i]n order for the conduct of a comparable employee and the Title VII plaintiff to be considered the 'same conduct,' it must be similar in kind and severity." *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 483 (6th Cir. 2008). While I make no determination regarding whether the conduct is similar in severity, it is certainly not similar in kind.

Alleged performance issues are not the same as alleged sexual misconduct or harassment, regardless of whether one may be more severe than the other. A comparator in plaintiff's case would be a male employee who OTS did not terminate even though he was not satisfactorily completing his job duties, for example, failing to meet quotas or having difficulty interacting with other employees.[5] Here, the types of conduct at issue are simply too dissimilar to compare.

Therefore, I find plaintiff cannot satisfy the fourth prong of her prima facie case of gender discrimination, and I grant defendant's motion as to that claim.

### 3. Hostile Work Environment

Plaintiff also brings a claim of hostile work environment against OTS, arguing that several male employees harassed her, and the company did nothing about it, even after she reported her concerns.

Defendant responds that she cannot show the purported harassment was either severe or pervasive, any alleged harassment was not related to plaintiff's gender but rather her unprofessional attitude, and OTS responded appropriately to plaintiff's concerns by terminating Mr. McGowan.

---

[5] These serve only as examples; the conduct of comparators need not be the exact same conduct plaintiff is accused of committing.

To establish a prima facie case of hostile work environment, plaintiff must show that (1) she was a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her membership in a protected class; (4) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile, or offensive work environment; and (5) the employer is liable. *Ejikeme v. Violet*, 307 F. App'x 944, 949 (6th Cir. 2009).

Defendant focuses its briefing on plaintiff's inability to satisfy the final three prongs of this analysis. I will therefore do the same.

### A. Harassment Based on Sex

Defendant primarily argues that OTS employees acted the way they did toward plaintiff not because she was a woman but because she was unprofessional and was not doing her job properly. It contends that plaintiff has no evidence that the employees' actions related to her sex.

Plaintiff responds that although many of the incidents she recounts were not sexually explicit, I can infer from the circumstances that they were based on sex. Specifically, plaintiff was the only woman working in her building, thus, she was "uniquely singled out" by the men.

In analyzing the instances of harassment plaintiff presents, only one appears to me to be explicitly based on sex. That is the comment that Mr. Cooksey allegedly made that "he had grabbed [plaintiff's] butt." (Doc. 11-1, pgID 68); *see Cremeens-Ashley v. Ohio/Dep't of Youth Servs. Ohio River Valley Juv. Corr. Facility*, No. 1:11CV839, 2014 WL 1276148, at *9 (S.D. Ohio Mar. 27, 2014) (comments about plaintiff's physical appearance were based on sex).

The others have no apparent connection. Those are: 1) Mr. McGowan punching his computer out of frustration with plaintiff, 2) Mr. McGowan allegedly throwing a tool in

12

plaintiff's direction as she walked past, 3) Mr. Opfer yelling at plaintiff to go away and get out of his face, and 4) male employees' generally negative attitude and demeanor.

Plaintiff is correct that circumstantial evidence can show an incident is based on sex where it does not appear to be so on its face. As the Sixth Circuit has explained, "[f]acially neutral incidents may be included in a hostile-work-environment analysis of the totality of the circumstances when there is some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 815 (6th Cir. 2013).

However, the evidence plaintiff has presented here is not sufficiently compelling. In arguing that the male employees singled her out for different treatment, plaintiff relies on the fact that she was the only woman at OTS assigned to her specific building. But this fact alone does not compel the conclusion that the instances she highlights occurred because she is a woman. Sixth Circuit case law does not support a presumption that any attitude or hostility a woman encounters in a male-dominated workplace is based on sex. While this circumstance is relevant, more is needed to support that conclusion.

Plaintiff points to *Waldo v. Consumers Energy Co.*, 726 F.3d 802 (6th Cir. 2013) in support of her contention that being the only woman in her building is sufficient circumstantial evidence of sex-based harassment. But that is not what the Sixth Circuit held in *Waldo*. It found that plaintiff's status as the only woman working with her crews was relevant to its determination that certain facially neutral incidents were based on sex. But it pointed to numerous other pieces of evidence, including "the use of gender-specific demeaning language, Waldo's lack of access to a bathroom, the incident involving Waldo's use of a purse on the work

13

trucks, [and] sexually explicit magazines in the work trucks." *Id.* That evidence, collectively, supported the Sixth Circuit's conclusion.

Here, plaintiff's evidence falls well short of that bar. As I explain above, the only evidence, in my view, that is explicitly sex-based is Mr. Cooksey's comment about "grabbing [plaintiff's] butt." There were numerous other sex-based incidents that caused the Sixth Circuit to rule as it did in *Waldo*. While Mr. Cooksey's comment was certainly inappropriate, that comment combined with plaintiff's status as the only woman in her building does not compare to the persistent harassment at issue in *Waldo*.

It therefore does not suggest that the other incidents about which plaintiff complains were based on her sex.

### B. Severity and Pervasiveness of Harassment

The next prong in the analysis is whether plaintiff can show that "under the totality of the circumstances the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707 (6th Cir. 2007). I must consider "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Id.*

Further, I only consider those instances of harassment that are based on plaintiff's membership in a protected class in my totality of the circumstances analysis. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000).

14

Here, the only instance of harassment that appears to me to be sex-based is Mr. Cooksey's comment to his colleagues that he "grabbed [plaintiff's] butt."[6] Such a comment in isolation does not establish a hostile work environment. *See Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 753 (S.D. Ohio 2011) ("[O]ne comment, while insensitive, is insufficient to constitute an actionable hostile work environment as a matter of law.").

### C. Employer Liability

Even if plaintiff could establish that the harassment she experienced was severe or pervasive, she would also need to prove employer liability.

Where an employee claims harassment by her co-workers, as is the case here, she must show that the employer "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Hafford v. Seidner*, 183 F.3d 506, 513 (6th Cir. 1999).

Plaintiff testified, and OTS does not contest, that she reported Mr. McGowan's behavior to Mr. Kandle. It is unclear whether she reported that he allegedly punched his computer or only reported that she believed he threw something at her. Regardless, OTS's response to that behavior was to fire Mr. McGowan. It is evident from this reaction that OTS took "prompt and appropriate corrective action" as to plaintiff's concerns with Mr. McGowan.

As to Mr. Opfer's and Mr. Cooksey's conduct, it is unclear from the record whether plaintiff reported it to anyone at OTS. While she maintains in her opposition brief that she reported harassment to Mr. Andrews four times, including "being ostracized and yelled at by

---

[6] I consider the comment and not the actual touching because plaintiff testified it was only the comment that offended her. She was not bothered by Mr. Cooksey helping her to remove the stain in the moment but found it inappropriate that he discussed it with other employees after the fact.

15

another employee," she does not identify the incidents she allegedly reported. (Doc. 14, pgID 169). Furthermore, she does not point to any evidence in the record supporting that contention. The only report of misconduct she testified to in her deposition related to Mr. McGowan's conduct. Without any additional evidence, the record requires me to conclude that the only harassment plaintiff reported involved Mr. McGowan.

In arguing that OTS did not respond adequately to her complaints of sexual harassment, plaintiff relies primarily on a statement Mr. Broski allegedly made. She claims that in response to her reports of harassment, Mr. Broski said "I just don't know what to do here." (*Id.*). Plaintiff contends that this statement "manifests indifference" toward the harassment, and therefore, shows that OTS's response to it was inadequate. *See Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868, 873 (6th Cir. 1997).

However, Mr. Broski's statement is not in the record. Neither plaintiff nor Mr. Andrews testified to it. The statement can be found only in plaintiff's complaint. (*See* Doc. 1, pgID 4). Therefore, I cannot consider it in evaluating defendant's motion for summary judgment.

Plaintiff has simply not presented sufficient evidence that OTS knew or should have known of the harassment and failed to implement appropriate corrective action. The only evidence in the record shows quite the opposite – that when confronted with allegations of harassment by Mr. McGowan, OTS took prompt corrective action and terminated his employment.

I therefore grant defendant's motion as to plaintiff's hostile work environment claim.

### 4. Retaliation

Plaintiff also brings a claim of retaliation against OTS, alleging that OTS fired her because she complained of sexual harassment.

While defendant moves for summary judgment on all of plaintiff's claims, it does not substantively address her retaliation claim in its initial brief. Plaintiff likewise does not address the claim in her opposition to the motion.

Defendant does include a short paragraph regarding the retaliation claim in its reply, but parties may not raise new arguments in their reply briefs. *See Woods v. Sterling*, No. 3:08 CV 1948, 2009 WL 916486, at *2 (N.D. Ohio Apr. 1, 2009).

And while defendant mentions plaintiff's retaliation claim in passing in its initial brief, it does not undergo any analysis of that claim. Therefore, I cannot evaluate it in this order. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.").

But because defendant's motion for summary judgment on plaintiff's retaliation claim remains at issue, I *sua sponte* grant leave to defendant to file a supplemental brief addressing that claim. Plaintiff will have the opportunity to respond, and defendant may submit a reply.

**Conclusion**

It is, therefore, ORDERED THAT

1. Defendant's motion for summary judgment (Doc. 12) on plaintiff's gender discrimination and hostile work environment claims be, and the same hereby is, granted; and

2. Defendant is granted leave to file a supplemental brief on plaintiff's retaliation claim within 30 days of the date of this order; plaintiff may file an opposition

17

within 14 days of that brief; and defendant may file a reply within 10 days of plaintiff's opposition.

So ordered.

/s/ James G. Carr<br>Sr. U.S. District Judge